COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Senior Judge Hodges
Argued at Richmond, Virginia


JAMES NAPOLEON CASSELL

                                    MEMORANDUM OPINION* BY
v.    Record No. 1595-98-2          JUDGE LARRY G. ELDER
                                      SEPTEMBER 28, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                     James E. Kulp, Judge

        John H. Goots (Chalkley & Witmeyer, LLP, on
        brief), for appellant.

        Kathleen B. Martin, Assistant Attorney
        General (Mark L. Earley, Attorney General, on
        brief), for appellee.


     James Napoleon Cassell (appellant) appeals from his bench

trial conviction for grand larceny of $4,769.96 pursuant to Code

§ 18.2-95.  On appeal, appellant contends the circumstantial

evidence was insufficient to support his conviction because it

proved, at most, that he was reckless in handling the money

rather than that he intentionally took it.  For the reasons that

follow, we disagree and affirm the conviction.

---

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

## FACTS

At the time of the instant offense, appellant managed a 7-Eleven convenience store. His duties included making bank deposits. On July 24, 1997, appellant notified his supervisor, Dean Turner, that he had lost the store's bank deposit of $4,769.96, most of which was in cash.

A review of the store's surveillance videotape, which records "everything that goes on . . . 24 hours a day" at the store's register, safe and front door areas, established that appellant removed money from the store safe at 7:14 a.m. and carried it back to the office in order to prepare his deposit. The videotape then showed appellant putting something back into the safe, which appellant told Turner was his "dropping the deposit back into the safe," as required by store policy. The videotape showed appellant dropped only "one small bundle of money" into the safe's "sleeve," and Turner testified it would have been impossible for appellant to drop a deposit of over $4,000 into the sleeve in one drop; it would have required separate drops of "four or five bundles." The videotape also showed that at 7:18 a.m., appellant left the store, ostensibly to take his wife to work, and returned at about 9:15 a.m.

The segment of tape from 10:40 to 11:03 a.m. was erased, and other segments were out of sequence. When the tape resumed at 11:04 a.m., it showed appellant leaving the office, going to

-

the register area and leaving the store with the bank bag in his hand at 11:13 a.m.

Appellant said he retrieved the money from the safe between 10:40 and 11:00 a.m. When appellant and Turner viewed the tape together, appellant said that "the only thing he could think of was that" he accidentally erased the portion of tape from 10:40 to 11:00 a.m. when he had reviewed it earlier to try to determine what had happened to the bank bag. Turner testified that the videotape machinery was manufactured with the record button and the play button on opposite sides of the machine "so a mistake cannot happen." Turner was certain he had not erased or taped over any portion of the tape himself. Two other 7-Eleven employees had viewed brief portions of the tape with appellant before Turner arrived, and neither remembered any gaps.

Appellant told Turner that when he left the store with the bank bag, he put it under the seat of his car and drove to the bank without making any stops but that when he arrived at the bank, the bag was not there. Appellant then cashed his own paycheck and paid an overdue insurance bill before returning to the store. Appellant said he was not overly concerned about the missing money bag because he believed he must have left it at the store, which he had done on previous occasions. When he could not find it at the store, he assumed "he must have put it on the hood of his car or lost it in some other fashion."

-

Appellant and Turner searched beneath the seat of appellant's car but found neither the bank bag nor any holes in the floor of the car.  Appellant reported he had been out until 4:30 a.m. on July 24, 1997, due to "a problem with his son," and had reported for work only a few hours later.

Appellant testified in keeping with his statements to Turner.  However, regarding his preparation of the deposit around 7:00 a.m., he testified that he put the money in the "back part" of the office with the lottery tickets or in the office drawer rather than back in the safe.  Other evidence established that this was in violation of store policy.  Appellant said that what he put in the safe was his "final drop," which comprised the store's receipts for the morning, which were to be tracked separately from the previous day's receipts.  He later testified that he retrieved the money, placed it in the deposit bag and "made the final drop" at around 11:00 a.m.  Appellant also said he was not worried when he could not find the bag because he had forgotten it on two or three prior occasions but had found it safe at the store, which was only minutes from the bank, and he offered the corroborating testimony of another employee that he previously had forgotten the bank bag.  He claimed he did not call the store because he thought the deposit was still safe back at the store and because, if he had called, he likely would have had to wait while his co-worker served customers before she could look for

-

the bag. He contended that he told Turner the bag may have been on the roof of his car when he drove off and that appellant and Turner looked for but did not find it in the parking lot and driveway of the store.

## II.

## ANALYSIS

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The judgment of a trial court, sitting without a jury, is entitled to the same weight as a jury verdict and will be disturbed only if plainly wrong or without evidence to support it. See id. The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). In its role of judging credibility, the fact finder may "disbelieve the self-serving testimony of the accused [in its entirety] and . . . conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). It also may accept certain portions of a defendant's testimony as true and reject other portions as false. See

-

<u>Pugliese v. Commonwealth</u>, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).

Under Code § 18.2-111, one is guilty of larceny if he "wrongfully and fraudulently use[s], dispose[s] of, conceal[s] or embezzle[s] any money . . . which he shall have received . . . by virtue of his . . . employment." <u>Id.</u> (proscribing embezzlement and making it punishable as grand or petit larceny). Such an offense requires proof of intent to deprive the owner of the property entrusted. See <u>Zoretic v. Commonwealth</u>, 13 Va. App. 241, 243, 409 S.E.2d 832, 833-34 (1991). Proof merely that property entrusted to the accused was misappropriated is insufficient, standing alone, to prove that the accused was the embezzler. See <u>id.</u> at 243, 409 S.E.2d at 834.

Intent, like any element of a crime, may be proved by circumstantial evidence, see <u>Servis v. Commonwealth</u>, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988), such as a person's conduct and statements, see <u>Long</u>, 8 Va. App. at 198, 379 S.E.2d at 476. "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." <u>Coleman v. Commonwealth</u>, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant."

-

Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

Here, the only hypothesis flowing from the evidence, when viewed in the light most favorable to the Commonwealth, is that appellant embezzled his employer's money, which had been entrusted to him to deposit at the bank. Appellant admitted and the surveillance videotape confirmed that he removed the money from the safe at 7:14 a.m. and carried it back to the office. Within a few minutes, appellant dropped one small bundle of money back into the safe. Appellant contended in his statement to Turner, contrary to his testimony at trial, that he returned the entire deposit to the safe at that time, as required by store policy. However, Turner testified that appellant could not have dropped a deposit of over $4,000 into the safe in one small bundle. Rather, such a drop would have required four or five separate bundles. Then, at 7:18 a.m., immediately after making the deficient drop, appellant left the store and did not return until 9:15 a.m.

Appellant contended in his statement to Turner, contrary to his trial testimony, that he removed the deposit from the safe between 10:40 and 11:00 a.m., but that portion of the videotape had been erased. The videotape showed appellant leaving the store at 11:13 a.m. with the bank bag, but no evidence established whether the deposit money was in the bag at that time. Appellant reported placing the bag under the seat of his

-

car, but he contended that he made no stops along the way and that the bag was not there when he arrived at the bank.  The evidence established that there were no holes in the floorboard of appellant's car.  Despite the fact that the bag was missing, appellant did not call the store to be sure it was safe, and he completed some personal errands before returning to the store to check on the money.  Although appellant contended at trial that he must have placed the bag on the hood of his car rather than under the seat and lost it when he drove to the bank, the trial court as the finder of fact was entitled to reject this portion of appellant's testimony and to conclude that he was lying to conceal his guilt.

The only hypothesis flowing from the remaining evidence, viewed in the light most favorable to the Commonwealth, is that appellant embezzled the deposit money from his employer, taking it either when he left the store at 7:18 a.m. after removing the deposit from the safe or when he left the store with the deposit bag at 11:13 a.m., ostensibly to take the deposit to the bank.

For these reasons, we affirm appellant's conviction.

<u>Affirmed.</u>

-