COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Alston
Argued at Richmond, Virginia


DOMINIQUE WARREN COLEMAN

                                                     MEMORANDUM OPINION* BY
v.        Record No. 1249-08-2                  JUDGE ROSSIE D. ALSTON, JR.
                                                          SEPTEMBER 29, 2009
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                                  Cleo E. Powell, Judge

           John W. Luxton (John W. Luxton, P.C., on brief), for appellant.

           John W. Blanton, Assistant Attorney General (Robert F.
           McDonnell, Attorney General, on brief), for appellee.


           Dominique Warren Coleman (appellant) was convicted in a bench trial of possession of

marijuana with intent to distribute, in violation of Code § 18.2-248.1.  On appeal, appellant

argues that the trial court erroneously failed to suppress the evidence of marijuana found in his

vehicle during a traffic stop.  For the reasons that follow, we affirm appellant's conviction.

                                        I.  BACKGROUND

           We address legal issues arising from a suppression motion "only after the relevant

historical facts have been established."  Raab v. Commonwealth, 50 Va. App. 577, 579, 652

S.E.2d 144, 146 (2007) (*en banc*) (citation omitted).  As the parties are fully conversant with the

record in this case, and because this memorandum opinion carries no precedential value, this

opinion recites only those facts and incidents of the proceedings as are necessary to the parties'

understanding of this appeal.  "On appeal, we construe the evidence in the light most favorable to

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Zoretic v. Commonwealth, 13 Va. App. 241, 242, 409 S.E.2d 832, 833 (1991) (citing Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)).

Viewed by that standard, the evidence showed that Officer J. Aronson, of the Chesterfield County Police Department, initiated a traffic stop after observing a vehicle with an inoperative license plate light. Officer Aronson parked his car behind the vehicle, with the emergency lights on, but the sirens off. The officer approached the vehicle and asked appellant, the driver, for his license and registration. He also asked appellant's passenger (passenger) to provide his license. Officer Aronson took both appellant's and passenger's licenses back to his patrol car. The officer ran both men's information through a database managed by the Department of Motor Vehicles, through a database that contained national and state files pertaining to wanted suspects, and through the Records Management System, which houses all of the Commonwealth's police reports. The search of the databases showed that appellant was in fact licensed and that there were no outstanding warrants in his name. Notably, the Records Management System revealed that passenger had recently been arrested for felony possession of marijuana with intent to distribute.

Because passenger had appeared nervous during his first interaction with Officer Aronson, the officer decided to speak with passenger further. Approximately ten to twelve minutes after initiating the stop, Officer Aronson approached the passenger side of the vehicle and asked passenger if he would mind stepping out of the vehicle to speak further with the officer. Passenger agreed to exit the vehicle, and while appellant remained in the vehicle, passenger and Officer Aronson conversed at the rear of the vehicle. Passenger consented to a search of his person, which produced neither weapons nor contraband. During this time, a second officer arrived in a marked police car, which he parked next to Officer Aronson's car.

During this time, Officer Aronson had not returned appellant's license or registration. No evidence was presented as to the duration of Officer Aronson's discussion with passenger at the rear of appellant's vehicle.

Officer Aronson then re-approached the passenger side of appellant's vehicle, intent on informing appellant what was transpiring with passenger. When the officer looked through the passenger window at appellant, who was still sitting in the driver's seat, Officer Aronson could see leafy green flakes, which appeared to be marijuana, on the passenger seat. Officer Aronson then asked appellant if he had anything illegal in his vehicle. When appellant claimed there was nothing illegal in his vehicle, Officer Aronson asked if the passenger seat had marijuana on it. Appellant stated that he had lent his vehicle to a friend. Officer Aronson then asked appellant if he would like to exit the vehicle to allow appellant to see the marijuana, which was visible to the officer through the passenger window. Appellant did so, and eventually identified the leafy green flakes as marijuana.

Subsequently, Officer Aronson searched appellant's person and discovered over $1,000 in various denominations. Finally, Officer Aronson found approximately one pound of marijuana in the vehicle, as well as a digital scale, a box of plastic bags, and a bundle of individual baggies.

Before trial, appellant moved to suppress the marijuana and the money found on appellant's person. Appellant argued that Officer Aronson subjected appellant to an unlawful Terry stop by detaining appellant well beyond the time necessary to address the broken license plate light. Appellant contended that Officer Aronson had the right to access appellant's driving record to confirm his driving status, but he did not have the right to detain appellant while he investigated passenger in the various databases.

The trial court denied the motion, ruling that appellant was not unlawfully seized. The trial court specifically found that Officer Aronson's discussion with passenger was consensual and that the delay caused by the consensual interaction was not so significant that appellant was unlawfully seized. Appellant was convicted of possession of marijuana with intent to distribute. This appeal followed.

## II.  ANALYSIS

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." McCain v. Commonwealth, 275 Va. 546, 551-52, 659 S.E.2d 512, 515 (2008). It is appellant's burden to show the denial of his motion to suppress constituted reversible error. Id. at 552, 659 S.E.2d at 515 (citing Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002); McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001); Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

On appeal, appellant concedes that the inoperative license plate light permitted Officer Aronson to stop his vehicle. Rather, appellant's argument focuses on his continuing detention following the stop, claiming that it was unlawful because there was no reasonable or articulable suspicion of criminal activity on the part of appellant. In support of his appeal, appellant stresses that Officer Aronson held appellant's driver's license and registration, did not issue a summons to appellant, and did not tell appellant he was free to leave. Appellant contends that no reasonable person would have felt free to depart under these circumstances.

We note that the analysis found in Ellis v. Commonwealth, 52 Va. App. 220, 662 S.E.2d 640 (2008), is instructive in the instant case. In Ellis, this Court found no error in the trial court's denial of a suppression ruling, where the trial court found that Ellis' Fourth Amendment rights were not violated when the police officer extended Ellis' detention by asking her questions

unrelated to the traffic stop.  Id. at 224, 228, 662 S.E.2d at 642, 644.  Specifically, Ellis had argued that the delay caused by the police officer's questioning tainted her subsequent consent to a search of her person, in which a police officer discovered cocaine.  Id. at 224, 662 S.E.2d at 642.

This Court found in Ellis that the "brief, incremental delay" did not constitute an unreasonable seizure in violation of the Fourth Amendment, and thus the cocaine seized during the consensual search was admissible.  Id. at 228, 662 S.E.2d at 644.  This Court held, "'where a seizure of a person is based on probable cause to believe that a traffic violation was committed, an officer does not violate the Fourth Amendment by asking a few questions about matters unrelated to the traffic violation, even if this conversation briefly extends the length of the detention.'"  Id. at 227, 662 S.E.2d at 643 (quoting United States v. Olivera-Mendez, 484 F.3d 505, 510 (8th Cir. 2007)).  "[T]he Fourth Amendment does not require the release of a person seized with probable cause at the earliest moment that step can be accomplished."  Id. (quoting Olivera-Mendez, 484 F.3d at 510-11) (internal quotation marks and citation omitted).  Other courts have held that as long as the delay in releasing a person seized for a traffic stop is a *de minimus* intrusion of that person's liberty interests, the delay does not constitute a seizure for purposes of the Fourth Amendment.  United States v. Alexander, 448 F.3d 1014, 1016 (8th Cir. 2006); see also Ingraham v. Wright, 430 U.S. 651, 674 (1977) ("There is, of course, a *de minimus* level of imposition with which the Constitution is not concerned."); United States v. Martin, 411 F.3d 998, 1002 (8th Cir. 2005) ("even if a dog sniff is thirty seconds to two minutes over the line drawn at the end of a routine traffic stop, a two-minute delay to conduct a canine sniff is a *de miminus* intrusion on the driver's personal liberty that does not violate the Fourth Amendment").

In the instant case, appellant presented evidence that approximately ten to twelve minutes elapsed between the time Officer Aronson initiated the traffic stop and the time he asked passenger to speak with him at the rear of the vehicle. No evidence was presented at trial regarding how long Officer Aronson and passenger spoke consensually at the rear of appellant's vehicle. Further, appellant did not present evidence as to whether running passenger's information through the state databases extended the amount of time Officer Aronson was in his police cruiser.

Our case law clearly shows that an officer does not violate an individual's Fourth Amendment rights when a traffic stop is extended by a brief, incremental delay caused by an officer asking questions unrelated to the traffic stop. No evidence was presented as to how much time elapsed prior to Officer Aronson's discovery of the marijuana flakes on the passenger seat. The record before this Court is not sufficient to allow us to determine if the delay was unreasonably long, as the record does not show how long the investigation of appellant's information or his conversation with Officer Aronson extended the traffic stop. Therefore, we find no error in the trial court's reasoning or result regarding the suppression motion, and affirm the trial court's decision.

<u>Affirmed.</u>