COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, Huff and Malveaux
Argued at Alexandria, Virginia


MARQUES DOMINICK JOHNSON

                                                    MEMORANDUM OPINION* BY
v.      Record No. 0206-21-4                    JUDGE MARY BENNETT MALVEAUX
                                                          JUNE 28, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Brian S. Szmak (Law Office of Samuel C. Moore, PLLC, on briefs),
for appellant.

Leah A. Darron, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General; Mason D. Williams, Assistant Attorney
General, on brief), for appellee.


Marques Johnson ("appellant") was convicted of violation of a protective order, in

violation of Code § 18.2-60.4. On appeal, he argues that the Alexandria Circuit Court ("the trial

court") erred in convicting him because the Commonwealth failed to prove that he entered upon

the property at 6100 Lincolnia Road and thus violated the protective order. For the following

reasons, we affirm the trial court.

I. BACKGROUND[1]

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Poole v.*

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Pursuant to Rule 5A:8(c), appellant submitted a written statement of facts in lieu of a

*Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

On March 23, 2020, C.W.[2] obtained a protective order against appellant in the Alexandria General District Court. The order prohibited appellant from having any contact with C.W. and required that he "remain off property at 6100 Lincolnia Road Alex[andria] VA." The protective order was to remain in effect through March 23, 2022.

On May 2, 2020, officers from the Alexandria Police Department arrived at 6100 Lincolnia Road, an apartment building known as Curve 6100, after receiving a call about a domestic disturbance. The incident involved C.W. and her niece, Cheryl Franklin. Franklin, who was dating appellant, was staying with C.W. at that time.

Officer Kniesler, the sole witness before the trial court, stated that when she arrived at 6100 Lincolnia Road she found Franklin sitting in a parked car. Appellant arrived a short time later after he received a telephone call from Franklin. Kniesler testified that she, another officer, appellant, and Franklin were all located on a driveway along the side of the Curve 6100 building. Between the building and the driveway lay a sidewalk that led to the building's main entrance.

While appellant was speaking with police, C.W. exited the building. Appellant told Kniesler that he was subject to a protective order issued on C.W.'s behalf and began discussing the order with Kniesler. The officer testified that during this discussion, appellant shouted at C.W. When police asked appellant to leave, he did so.

After investigating the disturbance between C.W. and Franklin, Officer Kniesler obtained a warrant for appellant's arrest. That warrant alleged that appellant had violated the terms of C.W.'s protective order.

---

[2] We use initials, instead of C.W.'s name, to protect her privacy.

Convicted in general district court of violation of a protective order, appellant appealed to the trial court, where Officer Kniesler testified as described above. Kniesler further testified that she is generally familiar with "6100 The Curve" and specifically familiar with the driveway where she and appellant spoke on May 2, 2020. Kniesler stated that the driveway is "part of" Curve 6100 and that she knew this because she had observed both residents of the apartment building and delivery services using the driveway.

A photograph of the apartment building and driveway was entered into evidence after Kniesler circled an area on the image to indicate where she and appellant had spoken. The circle designated an area of grass and curb that was at the edge of the driveway and separated from the apartment building by the sidewalk. In addition, the photograph showed that the driveway diverges from Lincolnia Road, is separated from the road by a shallow ramp, and is surfaced with a different material than is the road. Further, the photograph depicted a sign that states "Curve 6100" and is attached to the end of the apartment building at the corner of Lincolnia Road and the beginning of the driveway. The statement of facts submitted by appellant further indicates that the driveway has only a single entrance and egress, is not gated, fenced, or otherwise closed off to the public, and does not lead to the parking deck for Curve 6100.

At the close of the Commonwealth's case-in-chief, appellant moved to strike the evidence. The trial court denied the motion. It found that Officer Kniesler's familiarity with the area and her observations of the driveway's use provided sufficient evidence to find that appellant had been on the property at 6100 Lincolnia Road in violation of the protective order.

Appellant presented no evidence. The trial court convicted appellant, and this appeal followed.

## II. ANALYSIS

Appellant argues that the trial court erred in convicting him of violating C.W.'s protective order because the evidence did not prove that he "was on 'the property of 6100 Lincolnia Rd.'" Specifically, appellant contends that Officer Kniesler's testimony was insufficient for a reasonable trier of fact to find, beyond a reasonable doubt, that the "particular location" of his encounter with Kniesler was on the property he was prohibited from entering.

"When reviewing the sufficiency of the evidence, we view the facts 'in the light most favorable to the Commonwealth, the prevailing party at trial.'" *Ray v. Commonwealth*, 74 Va. App. 291, 307 (2022) (quoting *Fletcher v. Commonwealth*, 72 Va. App. 493, 501 (2020)). "This standard requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence].'" *Id.* (alteration in original) (quoting *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021)). "In addition, this Court affirms the decision of the trial court unless it 'was plainly wrong or lacked evidence to support it.'" *Sorrell v. Commonwealth*, 74 Va. App. 243, 246 (2022) (quoting *Adjei v. Commonwealth*, 63 Va. App. 727, 747 (2014)).

"We examine a trial court's factfinding 'with the highest degree of appellate deference.'" *Mollenhauer v. Commonwealth*, 73 Va. App. 318, 333 (2021) (quoting *Whitfield v. Commonwealth*, 57 Va. App. 396, 403 (2010)). "This deference is owed to both the trial court's assessment of the credibility of the witnesses and the inferences to be drawn 'from basic facts to ultimate facts.'" *Id.* (quoting *Davis v. Commonwealth*, 65 Va. App. 485, 500 (2015)). The trier of fact "'is entitled to consider all of the evidence,' direct and circumstantial, 'in reaching its determination.'" *Id.* (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)). Circumstantial evidence "is as competent and is entitled to as much weight as direct evidence,"

and "[w]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Williams v. Commonwealth*, 71 Va. App. 462, 484-85 (2020) (second alteration in original) (first quoting *Breeden v. Commonwealth*, 43 Va. App. 169, 177 (2004); then quoting *Moseley*, 293 Va. at 463). Further, "the appellate court's review of the record generally 'is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling.'" *Mollenhauer*, 73 Va. App. at 334 (quoting *Bolden v. Commonwealth*, 275 Va. 144, 147 (2008)). Ultimately, "the reviewing court 'ask[s] whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 333 (alteration in original) (quoting *Davis*, 65 Va. App. at 500).

Here, the trial court found the evidence sufficient to prove that appellant had been on the property at 6100 Lincolnia Road in violation of C.W.'s protective order, and we agree. Officer Kniesler testified, without contradiction, that the driveway where she encountered appellant was "part of" Curve 6100, the apartment building located at 6100 Lincolnia Road. *See Zoretic v. Commonwealth*, 13 Va. App. 241, 244 (1991) ("Uncontradicted testimony should ordinarily be accepted as true unless 'it is inherently improbable, inconsistent with circumstances in evidence, or somewhat contradictory in itself.'" (quoting *Servis v. Commonwealth*, 6 Va. App. 507, 525 (1988))). This testimony was based upon Kniesler's familiarity with the location, together with her experience of observing the driveway's use by residents of Curve 6100 and deliverymen. In fact, in support of this testimony, when Kniesler encountered appellant the driveway was in use by someone who was staying in the building—Cheryl Franklin—who was parked there in a car. The trial court credited and relied upon Kniesler's testimony, and this Court gives due deference to the trial court's decision to do so. *See Parham v. Commonwealth*, 64 Va. App. 560, 565 (2015) ("The law is . . . clear that determining the credibility of the witnesses and the weight

afforded the testimony of those witnesses are matters left to the trier of fact."); *Young v. Commonwealth*, 275 Va. 587, 590 (2008) (noting that "great" appellate deference is given to a trial court's assessment of witness credibility and testimonial weight).

In addition, other evidence and reasonable inferences support Officer Kniesler's testimony. The statement of facts reflects that Kniesler encountered appellant on a driveway along the side of the Curve 6100 building. The statement of facts further indicates that this driveway has a single point of ingress and egress and is separated from the Curve 6100 by a sidewalk leading up to the building's main entrance. The driveway is of a different composition from Lincolnia Road and is separated from that road by a shallow ramp. The photograph entered in evidence by the Commonwealth also makes clear that the driveway departs from Lincolnia Road at the corner of the apartment building where a sign is posted that reads "Curve 6100." All of these facts support a reasonable inference that when appellant entered the driveway from Lincolnia Road, he entered private property, specifically, the "property at 6100 Lincolnia Road" as described in C.W.'s protective order. Common understandings and definitions of the term "driveway" further support this reasonable inference. *See, e.g.*, *Driveway*, *Webster's Third New International Dictionary* (1993) ("[A] private road giving access from a public thoroughfare to a building . . . on abutting grounds."); Code § 46.2-100 (defining, for purposes of regulating motor vehicles and their operation in the Commonwealth, a "[p]rivate road or driveway" as "every way in private ownership and used for vehicular travel by the owner and those having express or implied permission by the owner, but not by other persons").[3]

---

[3] Appellant further argues that because the protective order "was drafted with reference to a specific piece of property, . . . the Commonwealth was required to prove the bounds of this property in order to establish that [he] had crossed those boundaries." However, appellant offers no legal authority to support his contention that to prove a violation of the protective order, the Commonwealth first had to prove the specific metes and bounds of the property by adducing testimony by property owners, recorded plats of survey or legal descriptions, or other evidence pertinent to civil real property disputes. Accordingly, we do not consider this argument. *See*

Based upon the evidence and the reasonable inferences to be drawn from that evidence, a rational trier of fact could have found that appellant was on the property at 6100 Lincolnia Road on May 2, 2020.  C.W.'s protective order prohibited appellant from being on that property on that date.  Accordingly, the trial court was neither plainly wrong nor without evidentiary support in convicting appellant of violating C.W.'s protective order.[4]

### III.  CONCLUSION

For the foregoing reasons, we hold that the evidence was sufficient to prove that appellant entered onto the property at 6100 Lincolnia Road and thus violated the terms of a protective order.  Accordingly, we affirm appellant's conviction.

*Affirmed.*

---

*Massie v. Commonwealth*, 74 Va. App. 309, 326 n.7 (2022) (noting that "Rule 5A:20 permits us to decline to address arguments that are unsupported by authority").

[4] We note that the statement of facts in this case provides evidence supporting an alternative basis for affirming appellant's conviction.  The statement of facts indicates that Officer Kniesler "heard [appellant] shout at [C.W.]" when she exited the apartment building, and thus that appellant violated the "no contact of any kind" provision of C.W.'s protective order. *See Green v. Commonwealth*, 72 Va. App. 193, 203-04 (2020) (affirming conviction for violation of a protective order issued under Code § 16.1-253.1 and noting that prohibited contacts are acts "that intentionally pierce the protective barrier between the petitioner and the respondent fashioned by the protective order" and that such acts may involve mere "attempted communication" (first quoting *Elliott v. Commonwealth*, 277 Va. 457, 464 (2009); then quoting Eric C. Surette, 28 C.J.S. *Domestic Abuse and Violence* § 46 (2019 & Supp. 2020))).